Mario Iskander, SBN 327025
mario@iskanderlaw.com
ISKANDER LAW, APC
1111 N. Brand Blvd., Suite 308
Glendale, CA 91202
Telephone: (240) 439-1970

Attorneys for Defendants
BETTER TAX RELIEF, LLC; BETTER RISE CAPITAL, LLC;
and BETTER COMPANIES, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LARRY NICO MATHEWS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER TAX RELIEF, LLC, a California limited liability company; BETTER RISE CAPITAL, LLC, a California limited liability company; BETTER COMPANIES, LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 8:26-cv-02161-MCS (KESx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT (FED. R. CIV. P. 12(b)(1), 12(b)(6)) AND TO STRIKE CLASS ALLEGATIONS (FED. R. CIV. P. 12(f), 23(c)(1)(A), 23(d)(1)(D)); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Mario Iskander; [Proposed] Order]<br><br>Date: December 14, 2026<br>Time: 9:00 a.m.<br>Ctrm: 7C, 7th Floor<br>Judge: Hon. Mark C. Scarsi<br><br>Complaint Filed: August 7, 2026 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, **December 14, 2026**, at **9:00 a.m.**, or as soon thereafter as the matter may be heard, in **Courtroom 7C,** 7th Floor, of the First Street U.S. Courthouse, 350 West First Street, Los Angeles, California 90012, before the Honorable

Mark C. Scarsi, Defendants Better Tax Relief, LLC ("BTR"), Better Rise Capital, LLC ("BRC"), and Better Companies, LLC ("Better Companies") (collectively, "Defendants") will and hereby do move the Court for an order dismissing Plaintiff's Class Action Complaint (Dkt. 1) in its entirety, as to every Defendant and every cause of action, and striking each class definition, as follows:

1. Dismissing every claim against BRC and Better Companies under Rule 12(b)(6), because the Complaint alleges no fact showing that either entity placed any call or is vicariously liable for any call under federal common-law agency principles (Compl. ¶¶ 15–20, 49, 52–55);
2. Dismissing the First through Sixth Causes of Action under Rule 12(b)(6) to the extent they rest on calls not plausibly attributed to any Defendant or on calls alleged to have been placed by unidentified vendors, lead generators, dialing platforms, or voicemail-delivery platforms (¶¶ 19, 40, 47, 51–52);
3. Dismissing the First and Second Causes of Action (47 U.S.C. § 227(b)) in their entirety, including as to BTR, because the Complaint does not plausibly allege that any Defendant made any prerecorded call (¶¶ 19, 40, 42, 49, 52–53, 81);
4. Dismissing the Third and Fourth Causes of Action (47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)) in their entirety, because no do-not-call request to any Defendant is pleaded, at most one later call is alleged, the § 64.1200(d)(1)–(2) theory is conclusory, and calls made before any request are not actionable (¶¶ 44, 46, 49–50, 53, 56–57);
5. Dismissing the Fifth and Sixth Causes of Action (47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2)) in their entirety, because the Complaint does not plausibly allege more than one telephone call within a twelve-month period by or on behalf of the same Defendant (¶¶ 51–55, 96–97);

6. Dismissing the Third through Sixth Causes of Action to the extent they rest on the June 26, 2026 text message, which the Complaint alleges was sent in response to Plaintiff's own request (¶¶ 49, 54(c));

7. Dismissing the Second, Fourth, and Sixth Causes of Action, which fall with the First, Third, and Fifth Causes of Action and plead a discretionary enhancement of damages rather than separate claims (¶¶ 80–83, 90–93, 101–104);

8. Dismissing the Seventh Cause of Action under Rule 12(b)(6), because Tex. Bus. & Com. Code §§ 302.101 and 302.302 create no private right of action, the Complaint pleads none of the elements of the only private remedy (Tex. Bus. & Com. Code §§ 302.303, 17.50), including that Plaintiff is a "consumer," and the Complaint does not allege that BRC or Better Companies is a "seller" (¶¶ 39, 105–113);

9. Dismissing Plaintiff's demands for injunctive and declaratory relief (Prayer ¶¶ b, h) under Rule 12(b)(1), because Plaintiff lacks Article III standing to seek prospective relief;

10. Striking under Rules 23(c)(1)(A) and 23(d)(1)(D), and alternatively Rule 12(f), (a) the Internal Do-Not-Call Class and National Do-Not-Call Registry Class definitions as fail-safe classes; (b) the Robocall Class definition as overbroad and defined by the merits; and (c) from the Texas Registration Subclass definition, the words "or whose telephone numbers bear Texas area codes" and "at a time when Defendants did not hold a registration certificate issued by the Texas Secretary of State pursuant to Tex. Bus. & Com. Code § 302.101," and limiting its period to the two years preceding the filing of the Complaint (¶ 64); and

11. Striking under Rule 12(f) paragraph 62 of the Complaint and the allegations of paragraphs 81 and 102 that Defendants acted after being "sued repeatedly for the same conduct."

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 and Section 9(c) of the Court's Initial Standing Order, which took place by Zoom videoconference on October 20, 2026. (Declaration of Mario Iskander ("Iskander Decl.") ¶¶ 2–7 & Exs. A–B.) The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Mario Iskander, the pleadings and papers on file in this action, and such further argument and evidence as may be presented at or before the hearing.

Dated: November 16, 2026

Respectfully submitted,
ISKANDER LAW, APC

By: /s/ Mario Iskander
Mario Iskander, Esq.
Attorneys for Defendants
Better Tax Relief, LLC,
Better Rise Capital, LLC, and
Better Companies, LLC

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 12

II. PLAINTIFF'S ALLEGATIONS ..... 12

III. LEGAL STANDARDS ..... 14

IV. ARGUMENT ..... 15

A. The Complaint States No Claim Against BRC or Better Companies ..... 15

1. A Defendant Is Liable Only If It Placed the Call or Is the Caller's Principal ..... 15

2. The Complaint Alleges No Call by, and No Agency Relationship With, BRC or Better Companies ..... 16

3. Common Ownership and a Shared Building Do Not Plead Liability ..... 17

B. Counts One Through Six Fail to the Extent They Rest on Calls Not Attributed to Any Defendant or Placed by Third Parties ..... 18

C. Counts One and Two Fail in Their Entirety, Including as to BTR ..... 19

D. Counts Three and Four Fail in Their Entirety ..... 20

1. No Do-Not-Call Request to Any Defendant Is Pleaded ..... 20

2. At Most One Later Call Is Alleged ..... 20

3. The "No Written Policy or Training" Theory Is a Disjunctive Guess ..... 20

4. Calls Before Any Request Are Not Actionable ..... 21

E. Counts Five and Six Fail in Their Entirety ..... 21

F. The June 26, 2026 Text Is Not a Violating Call ..... 22

G. Counts Two, Four, and Six Are Not Separate Claims ..... 22

H. Count Seven Fails ..... 23

1. Sections 302.101 and 302.302 Confer No Private Right of Action ..... 23

2. Plaintiff Does Not Plead That He Is a "Consumer" ..... 24

3. BRC and Better Companies Are Not Alleged to Be "Sellers" ....................... 25

I. Plaintiff Lacks Standing to Seek Injunctive or Declaratory Relief ............................ 25

J. The Four Class Definitions Are Defective on Their Face ........................................ 26

1. The Internal Do-Not-Call Class Is a Fail-Safe Class ...................................... 26

2. The National Do-Not-Call Registry Class Is a Fail-Safe Class ...................... 27

3. The Texas Subclass Cannot Be Defined by Area Code or by the Registration Element, or Reach Back Four Years .................................. 27

4. The Robocall Class Is Overbroad and Defined by the Merits ....................... 28

K. The "Sued Repeatedly" Allegations Should Be Stricken ........................................... 28

V. CONCLUSION ........................................................................................................ 28

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ....................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................14, 16, 21

*Barnes v. SunPower Corp.*, No. 22-cv-04299-TLT, 2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ....................18, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................14

*Bell v. Hawx Servs., LLC*, No. 2:24-cv-00825-DC-DMC, 2026 WL 2389324 (E.D. Cal. Aug. 17, 2026) ....................26, 27, 28

*Blair v. Assurance IQ LLC*, No. C23-0016-KKE, 2023 WL 6622415 (W.D. Wash. Oct. 11, 2023) ....................25

*Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004) ....................24

*Cacho v. Live Transfers, Inc.*, No. EP-23-CV-00372-DCG, 2024 WL 3103324 (W.D. Tex. June 24, 2024), *report and recommendation adopted*, 2024 WL 3595780 (W.D. Tex. July 30, 2024) ....................24

*Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 20046134 (W.D. Tex. Jan. 26, 2022) ....................25

*Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778 (W.D. Tex. July 15, 2024) ....................23, 24

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ....................25

*Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ....................18

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................25

*Coffey v. Fast Easy Offer, LLC*, 178 F.4th 480 (9th Cir. 2026) ....................21, 22

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) ....................21

*Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000) ....................24

*Cushman v. GC Servs., L.P.*, 397 F. App'x 24 (5th Cir. 2010) ....................24

*Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-03298-MMC, 2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ... 26, 27, 28

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ... 14

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd on other grounds*, 577 U.S. 153 (2016) ... 15

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019) ... 15

*Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026) ... 22

*In re Honest Co., Inc. Sec. Litig.*, 343 F.R.D. 147 (C.D. Cal. 2022) ... 15

*In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574 (2013) ... 15, 18

*Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-CV-00121-JCB-KNM, 2022 WL 17546957 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022) ... 23, 24

*Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443 (9th Cir. 2018) ... 16, 18

*Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010 (9th Cir. 2018) ... 16, 18

*Laccinole v. Rocket Mortg., LLC*, 609 F. Supp. 3d 68 (D.R.I. 2022) ... 21

*Lewis v. Casey*, 518 U.S. 343 (1996) ... 25

*Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 WL 2972447 (S.D. Cal. July 12, 2017) ... 17

*Luckau v. Sunrun, Inc.*, No. 25-cv-01661-JST, 2025 WL 2780784 (N.D. Cal. Sept. 30, 2025) ... 21

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ... 26, 28

*Nichols v. eHealthInsurance Servs., Inc.*, No. 23-cv-06720-EKL, 2025 WL 689721 (N.D. Cal. Mar. 3, 2025) ... 27

*Odom v. ECA Mktg., Inc.*, No. EDCV 20-851 JGB (SHKx), 2020 WL 6114917 (C.D. Cal. Aug. 20, 2020) ... 23

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc) ... 26, 28

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ... 27

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ... 17

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) .......... 14

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 15

*Sapan v. Bloom Ret. Holdings, Inc.*, No. 8:24-cv-01213-FWS-KES, 2025 WL 1718083 (C.D. Cal. Apr. 14, 2025) .......... 18, 19

*Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858-HSG, 2020 WL 2474421 (N.D. Cal. May 13, 2020) .......... 16

*Shook v. Atallah Grp. US Inc.*, 747 F. Supp. 3d 1321 (C.D. Cal. 2024) .......... 16

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) .......... 14, 17, 18

*Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026) .......... 22

*Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058 (C.D. Cal. 2021) .......... 20

*Thomas v. Elite Legal Prac. PC*, No. CV 25-10854-MWF (MAAx), 2026 WL 1048217 (C.D. Cal. Mar. 23, 2026) .......... 24

*Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014) .......... 16, 19

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 15, 25

*United States v. Bestfoods*, 524 U.S. 51 (1998) .......... 17

*Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133 (D. Nev. 2025) .......... 18, 19

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) .......... 15

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) .......... 15, 28

*Wilson v. PacifiCorp*, No. 6:24-cv-01956-AA, 2025 WL 2802987 (D. Or. Sept. 30, 2025) .......... 26

**Statutes and Regulations**

47 U.S.C. § 227 .......... 13, 14, 16, 17, 19, 20, 21, 22, 27

47 C.F.R. § 64.1200 .......... 14, 20, 21, 22, 26, 27

Tex. Bus. & Com. Code § 17.45 .......... 24

Tex. Bus. & Com. Code § 17.50 .......... 23, 24

Tex. Bus. & Com. Code § 17.501 .......... 25

Tex. Bus. & Com. Code § 17.505 .......... 25

Tex. Bus. & Com. Code § 17.565 ........ 25, 27

Tex. Bus. & Com. Code § 302.001 ........ 25

Tex. Bus. & Com. Code § 302.101 ........ 14, 23, 25, 27

Tex. Bus. & Com. Code § 302.302 ........ 14, 23, 24

Tex. Bus. & Com. Code § 302.303 ........ 23, 24

**Rules**

C.D. Cal. L.R. 7-3 ........ 12

Fed. R. Civ. P. 12(b)(1) ........ 14

Fed. R. Civ. P. 12(f) ........ 15

Fed. R. Civ. P. 23(d)(1)(D) ........ 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Larry Nico Mathews alleges that he received about one hundred prerecorded voicemails over fourteen months from "constantly rotating" and "spoofed" telephone numbers, and concedes that he "cannot determine from the calls themselves which entity transmitted each one." (Compl. ¶¶ 40–41, 52.) He answered two of those calls, in June and July 2026, and each time the live representative he reached identified one company: Better Tax Relief, LLC ("BTR"). (¶¶ 49, 53–55.) From those two conversations Plaintiff has sued three companies, on behalf of four classes reaching back four years, under two TCPA provisions, two FCC regulations, and a Texas registration statute.

The Complaint states no claim against any Defendant. It pleads no call by, and no agency relationship with, Better Rise Capital, LLC ("BRC") or Better Companies, LLC ("Better Companies"). It attributes the anonymous calls to no one. Even as to BTR, the two calls it describes show only that Plaintiff reached BTR representatives after prerecorded prompts from spoofed numbers, not that BTR made the prerecorded calls; and it pleads no do-not-call request that BTR received and no second violating call by the same entity. The Texas count invokes sections that confer no private right and seeks a penalty Plaintiff cannot recover. The demand for prospective relief rests on no threatened future call. And each of the four class definitions is defective on its face. Defendants raised each issue at the Local Rule 7-3 conference and offered to stipulate to curative amendments. Plaintiff has not amended.

## II. PLAINTIFF'S ALLEGATIONS

*The parties.* Plaintiff, a Texas resident, alleges that he subscribes to a cellular number ending in 2446, registered on the National Do Not Call Registry since May 2022. (¶¶ 11–13.) Defendants are California limited liability companies with offices in separate suites of one Irvine building. (¶¶ 15–17.) BTR "markets tax-relief and tax-resolution services." (¶ 15.) The Complaint alleges nothing about what BRC or Better Companies does, other than that, "[o]n information and belief," the three entities "share common ownership, management, officers,

managers, and employees" and each "directed, controlled, participated in, authorized, and/or ratified" the calls (¶ 18), and that each was "the agent, servant, employee, or joint venturer of each other Defendant" (¶ 20). Paragraph 19 names Doe defendants, "including any vendor, lead generator, dialing platform, 'ringless voicemail' or other voicemail-delivery platform, or affiliated entity that transmitted" the calls.

*The calls.* Beginning June 20, 2025, "Defendants placed, or caused to be placed on their behalf," at least one hundred prerecorded voicemails from "constantly rotating telephone numbers." (¶¶ 40–41.) On May 6, 2026, Plaintiff texted "STOP" "to the number that called him" (¶ 44), a number of the kind he alleges was "spoofed" (¶ 52), and he alleges undated later requests "by text message and upon answering their calls" (¶¶ 46, 50). On June 25, 2026, he answered a call, followed the prerecorded prompt to a sales representative, and "asked for the identity of the company the sales representative worked for"; a text message the next day identified "Better Tax Relief, LLC." (¶ 49.) On July 30, 2026, he answered a call, pressed 1, and was disconnected; he then called the number back and reached a representative who "confirmed that he was calling from Better Tax Relief, LLC." (¶ 53.) Plaintiff alleges that these three contacts, "standing alone," establish his § 227(c)(5) claim against "the same entity—Better Tax Relief, LLC." (¶¶ 54–55.)

For every other call, Plaintiff pleads attribution "[o]n information and belief," based on a "similar sounding" voice and script and a "press 1" prompt (¶ 51), and he concedes that because the numbers "were constantly rotated and, on information and belief, spoofed, Plaintiff cannot determine from the calls themselves which entity transmitted each one" (¶ 52). He alleges, again on information and belief, that Defendants "either" lack a written do-not-call policy, "and/or" failed to train personnel, "and/or" failed to honor requests (¶ 56), and that no Defendant holds a Texas registration certificate (¶ 59).

*The claims.* Counts One and Two allege negligent and willful violations of 47 U.S.C. § 227(b); Counts Three and Four, of § 227(c) and 47 C.F.R. § 64.1200(d); Counts Five and Six, of § 227(c) and 47 C.F.R. § 64.1200(c); and Count Seven, of Tex. Bus. & Com. Code §§ 302.101

and 302.302. (¶¶ 73–113.) Plaintiff seeks to represent a nationwide Robocall Class, National Do-Not-Call Registry Class, and Internal Do-Not-Call Class, and a Texas Registration Subclass, each reaching back four years (¶ 64), and prays for statutory and treble damages, civil penalties of up to $5,000 per solicitation, a declaration, and an injunction (Prayer ¶¶ a–k).

**III. LEGAL STANDARDS**

A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and facts "merely consistent with" liability "stop[] short of the line between possibility and plausibility." *Id.* at 678–79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014). Pleading on information and belief is permitted "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

A Rule 12(b)(1) attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Rule 23(d)(1)(D) authorizes an order requiring that the pleadings "be amended to eliminate allegations about representation of absent persons," and a defendant may bring a "preemptive" motion where the complaint shows that a class cannot be maintained. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939–40 (9th Cir. 2009); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009). Rule 12(f) reaches "redundant, immaterial, impertinent, or scandalous matter," *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74

(9th Cir. 2010), and the movant must "offer specific support showing a motion to strike is necessary to avoid prejudice or will further the interests of judicial efficiency." *In re Honest Co., Inc. Sec. Litig.*, 343 F.R.D. 147, 151 (C.D. Cal. 2022) (Scarsi, J.). Defendants make that showing below and do not ask the Court to strike any prayer for relief. *See Whittlestone*, 618 F.3d at 974–75.

## IV. ARGUMENT

### A. The Complaint States No Claim Against BRC or Better Companies

#### *1. A Defendant Is Liable Only If It Placed the Call or Is the Caller's Principal*

A person "initiates" a call when it "takes the steps necessary to physically place a telephone call." *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013). A defendant that did not physically place the call generally did not "initiate" it and may be held liable for it vicariously "under federal common law principles of agency." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (quoting *DISH Network*, 28 FCC Rcd. at 6574), *aff'd on other grounds*, 577 U.S. 153 (2016). "[A] court may not automatically attribute a third-party caller's TCPA violations to a defendant"; the plaintiff must establish an agency relationship. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072–73 (9th Cir. 2019). An agency relationship requires that the principal control or have the right to control the agent's conduct, and actual authority exists only where the agent acts with the principal's authorization, *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448–49 (9th Cir. 2018); apparent authority requires a manifestation by the principal to the plaintiff on which the plaintiff reasonably relied, *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679–80 (9th Cir. 2014); and ratification requires that the actor "acted or purported to act as an agent on the person's behalf" and that the principal affirmed the act with knowledge of the material facts or with awareness that such knowledge was lacking, *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014–15 (9th Cir. 2018) (internal quotation marks omitted). Section 227(c)(5) adds its own limit: it reaches only calls "by or on behalf of the same entity."

### *2. The Complaint Alleges No Call by, and No Agency Relationship With, BRC or Better Companies*

The Complaint identifies the caller on the only three contacts it describes with particularity as "Better Tax Relief, LLC" (¶¶ 49, 53–54) and affirms that they were made "by or on behalf of the same entity—Better Tax Relief, LLC" (¶ 55). It does not allege that BRC or Better Companies placed a call, sent a text, employed either representative, used either number, or sold Plaintiff anything, or that either controlled BTR's telemarketing, made any statement to Plaintiff, or knowingly accepted the benefit of any call. What it pleads instead are labels: that each Defendant "directed, controlled, participated in, authorized, and/or ratified" the calls (¶ 18) and was the "agent, servant, employee, or joint venturer" of the others (¶ 20). Those are "[t]hreadbare recitals of the elements." *Iqbal*, 556 U.S. at 678. This Court has applied exactly that rule to federal common-law agency allegations: a pleading that one party acted "as an agency of" another is a legal conclusion; apparent authority requires a manifestation by the principal; ratification "presupposes an existing agency relationship"; and where no facts are alleged "going toward any kind of agency relationship," the claim is dismissed. *Shook v. Atallah Grp. US Inc.*, 747 F. Supp. 3d 1321, 1328–29 (C.D. Cal. 2024) (Scarsi, J.). *See also Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858-HSG, 2020 WL 2474421, at *4 (N.D. Cal. May 13, 2020) (conclusory allegation that "Defendants and their agents transmit text messages" insufficient); *Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 WL 2972447, at *3–4 (S.D. Cal. July 12, 2017) ("[a]gency means more than mere passive permission; it involves request, instruction, or command" (citation and internal quotation marks omitted)).

The "Defendants" device does not rescue the pleading. Each collective allegation (¶¶ 40–41, 44–47, 56–57) describes conduct that, when the Complaint descends to particulars, it attributes to BTR alone. And Plaintiff's concession that he "cannot determine from the calls themselves which entity transmitted each one" (¶ 52) is a concession that he has no factual basis to plead that BRC or Better Companies transmitted any of them. *See Soo Park*, 851 F.3d

at 928. Because § 227(c)(5) requires more than one call "by or on behalf of the same entity," Plaintiff cannot state a do-not-call claim against an entity to which he attributes no call at all.

***3. Common Ownership and a Shared Building Do Not Plead Liability***

What remains is the allegation that the Defendants share owners, managers, and an address. (¶ 18.) That describes an ordinary corporate family. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). A plaintiff who seeks to hold an affiliate liable must plead facts supporting alter-ego liability or an agency relationship with respect to the conduct at issue, and "[t]otal ownership and shared management personnel are alone insufficient." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (alter-ego test). The Complaint alleges no undercapitalization, commingling, or disregard of formalities, and by placing each Defendant in a different suite (¶¶ 15–17) it pleads that they maintain separate offices. Every claim against BRC and Better Companies should be dismissed.

**B. Counts One Through Six Fail to the Extent They Rest on Calls Not Attributed to Any Defendant or Placed by Third Parties**

Beyond the contacts in paragraph 54, attribution of the alleged one hundred calls, beginning a year before any caller named a company, rests on information and belief: a "similar sounding" voice, a "tax resolution review department" script, and a "press 1" prompt. (¶¶ 51–52.) Those features describe the architecture of an industry, not a particular caller. *Soo Park* permits information-and-belief pleading where the plaintiff supplies facts that make the inference plausible, 851 F.3d at 928; it does not permit a plaintiff to attribute a year of anonymous calls to a defendant on the strength of a generic script.

The Complaint also pleads in the alternative that unidentified "vendor[s], lead generator[s], dialing platform[s]," and voicemail-delivery platforms transmitted the calls (¶ 19) and that Defendants "caused" calls "to be placed on their behalf" (¶¶ 40, 47). Each alternative must state a claim on its own. If a third party physically placed a call, no Defendant is directly

liable for it absent facts showing that it was so involved in placing the call as to have initiated it, *DISH Network*, 28 FCC Rcd. at 6583, and the Complaint must plead facts showing actual authority, apparent authority, ratification, or control over the manner and means of the caller's work. *Jones*, 887 F.3d at 449–51; *Kristensen*, 879 F.3d at 1014–15. It pleads none: no vendor, no contract, no control over scripts, lists, or dialing, and no knowledge that a vendor was calling registered or opted-out numbers. Courts dismiss seller-liability theories pleaded this way. *Barnes v. SunPower Corp.*, No. 22-cv-04299-TLT, 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023); *Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 WL 1275343, at *6 (N.D. Cal. Mar. 20, 2019) ("control over the content of an advertising call, without more, is insufficient to plead vicarious liability"); *Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1141–42 (D. Nev. 2025), *appeal docketed*, No. 25-2263 (9th Cir. Apr. 8, 2025); *Sapan v. Bloom Ret. Holdings, Inc.*, No. 8:24-cv-01213-FWS-KES, 2025 WL 1718083, at *5–7 (C.D. Cal. Apr. 14, 2025) (dismissing vicarious-liability theories pleaded on information and belief). Counts One through Six should be dismissed to the extent they rest on calls other than those in paragraph 54 or on calls placed by third parties.

### C. Counts One and Two Fail in Their Entirety, Including as to BTR

Section 227(b)(1)(A) reaches the person who "make[s]" a prerecorded call. Plaintiff does not allege facts showing that BTR made either call he identifies. On June 25, he followed a prerecorded prompt, was transferred to a representative, and learned the next day that the representative worked for BTR. (¶ 49.) On July 30, the prerecorded call disconnected when he pressed 1, and he reached a BTR representative only by dialing the number himself. (¶ 53.) That is the sequence the court found insufficient in *Barnes*: a plaintiff who pressed a number during a prerecorded call, was connected to a representative, and then received a confirmation email from the seller's domain had not alleged facts showing that the seller made the call or controlled whoever did. 2023 WL 2592371, at *3. A representative's statement about his own employer shows who employed the representative, not who transmitted the prerecorded message that preceded the transfer, and it cannot supply apparent authority, which must rest

on the principal's own manifestation. *Usanovic*, 775 F. Supp. 3d at 1141; *Thomas*, 582 F. App'x at 679–80.

Plaintiff's own allegations point away from BTR as the transmitter. The calls came from "constantly rotating" and "spoofed" numbers (¶¶ 40, 52); Plaintiff pleads that dialing and voicemail-delivery vendors may have transmitted them (¶ 19); and he concedes that he cannot tell from the calls which entity transmitted any of them (¶ 52). Paragraph 42 establishes, at most, that the messages were prerecorded, not who sent them. Defendants recognize that a court in this District has found direct liability adequately pleaded where callers identified themselves as the defendant and called from consistent numbers. *Sapan*, 2025 WL 1718083, at *3. That reasoning does not reach a complaint whose author pleads that the numbers were rotated and spoofed and that he cannot attribute the calls. Count Two adds only that Defendants "knew" they lacked consent and the "sued repeatedly" allegation (¶ 81), and it falls with Count One. Both counts should be dismissed.

### D. Counts Three and Four Fail in Their Entirety

#### *1. No Do-Not-Call Request to Any Defendant Is Pleaded*

An internal do-not-call claim requires a request that "clearly express[es]" the subscriber's desire not to be called. *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1060 (C.D. Cal. 2021) (internal quotation marks omitted). It also requires that the request reach the entity sued, because § 64.1200(d) obliges a caller to maintain a list of persons "who request not to receive such calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). The only dated request is the May 6 "STOP" text, sent "to the number that called him" (¶ 44), one of the rotated numbers Plaintiff pleads were spoofed (¶¶ 40, 52). He does not allege that the number belonged to, or was monitored by, BTR or anyone acting for it. When he did reach BTR's representative on June 25, he asked whom the representative worked for (¶ 49); he does not allege that he asked BTR to stop calling. His remaining requests are alleged generically, with no date, number, or recipient. (¶¶ 46, 50.)

***2. At Most One Later Call Is Alleged***

Even crediting a request made to BTR on or after June 25, the regulation allows a reasonable time, not to exceed ten business days, to honor it, 47 C.F.R. § 64.1200(d)(3), and Plaintiff identifies one later call: July 30. (¶ 53.) Section 227(c)(5) requires "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." One call is not more than one.

***3. The "No Written Policy or Training" Theory Is a Disjunctive Guess***

Paragraph 56 pleads, on information and belief, that Defendants "either" lack a written policy, "and/or" failed to train personnel, "and/or" failed to honor requests. A complaint that cannot say whether a written policy exists has no factual content about the policy. Allegations that a defendant failed to implement the required procedures, unaccompanied by any fact about its actual procedures, are "mere recitations of the legal elements" that are disregarded. *Laccinole v. Rocket Mortg., LLC*, 609 F. Supp. 3d 68, 73–74 (D.R.I. 2022). Continued calls from spoofed numbers are "merely consistent with" a procedural failure. *Iqbal*, 556 U.S. at 678.

***4. Calls Before Any Request Are Not Actionable***

Paragraph 57 alleges that every call before Plaintiff's first request violated § 64.1200(d) because Defendants lacked compliant procedures. A person who never asked not to be called has no injury traceable to the absence of a do-not-call list: there is "no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by" such persons. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271–72 (11th Cir. 2019); *see also Luckau v. Sunrun, Inc.*, No. 25-cv-01661-JST, 2025 WL 2780784, at *1–2 (N.D. Cal. Sept. 30, 2025) (plaintiff who never asked to be placed on internal do-not-call list lacked standing to sue under § 64.1200(d)(4)). Counts Three and Four should be dismissed.

**E. Counts Five and Six Fail in Their Entirety**

Section 227(c)(5) gives a claim only to a person who received "more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the registry rule. No call is attributed to BRC or Better Companies (Part IV.A). As to BTR, neither

identified call is plausibly alleged to have been made by or on behalf of BTR (Part IV.C); the June 26 text is not a telephone solicitation (Part IV.F); and the remaining calls are attributed to no one (Part IV.B). That leaves, at most, one call.

Defendants do not dispute that, under *Coffey v. Fast Easy Offer, LLC*, 178 F.4th 480 (9th Cir. 2026), whether a call is a "telephone solicitation" turns on the purpose of its "initiation," that purpose may be inferred from content and context, and one sales purpose suffices. *Id.* at 483–84. The defect here is not purpose but identity. *Coffey* decided only whether the messages there, sent by a named employee of the defendant, were solicitations. *See id.* at 483–84. It did not hold that a generic "tax resolution" message from a rotating, spoofed number is a call "by or on behalf of" any particular defendant. Counts Five and Six should be dismissed.

**F. The June 26, 2026 Text Is Not a Violating Call**

Plaintiff counts the June 26 text as a violation of § 64.1200(c)(2) and (d)(3). (¶ 54(c).) Under *Coffey*, the question is the purpose of initiating the message, read in context. 178 F.4th at 483–84. The context is pleaded: Plaintiff asked the representative to identify his employer, and the text answered that question. (¶ 49.) A message sent to answer the recipient's own request is sent with his "prior express invitation or permission" and is excluded from the definition of "telephone solicitation" by 47 U.S.C. § 227(a)(4)(A). That exclusion is independent of the "for the purpose of encouraging" element that *Coffey* construed, so it applies even if a sales purpose is inferred. Nor is a message sent at the recipient's request "initiate[d]" for telemarketing purposes under § 64.1200(d). Defendants also preserve the position that a text message is not a "telephone call" under § 227(c)(5). *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 535–37 (7th Cir. 2026); *but see Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026) (text message is a "call" under § 227(b)). Counts Three through Six should be dismissed to the extent they rest on the June 26 text.

**G. Counts Two, Four, and Six Are Not Separate Claims**

Counts Two, Four, and Six fall with Counts One, Three, and Five. Independently, they plead "knowing and/or willful" violations of the same provisions on the same facts. (¶¶ 80–

83, 90–93, 101–104.) Sections 227(b)(3) and 227(c)(5) each create one cause of action; if the defendant "willfully or knowingly violated" the statute or regulations, "the court may, in its discretion, increase the amount of the award." 47 U.S.C. §§ 227(b)(3), 227(c)(5). Willfulness is a discretionary enhancement of the award on one claim, not an element of a second. Courts in this District have sometimes allowed such counts to proceed, *see, e.g.*, *Odom v. ECA Mktg., Inc.*, No. EDCV 20-851 JGB (SHKx), 2020 WL 6114917, at *2–3 (C.D. Cal. Aug. 20, 2020), and Defendants offered to resolve the point by stipulation. Because the duplicative counts multiply the pleading and the class claims, they should be dismissed, with the willfulness allegations treated as a request for enhanced damages under Counts One, Three, and Five.

**H. Count Seven Fails**

***1. Sections 302.101 and 302.302 Confer No Private Right of Action***

Count Seven is pleaded solely under Tex. Bus. & Com. Code §§ 302.101 and 302.302 and seeks only "civil penalties of up to $5,000 for each telephone solicitation." (¶¶ 105–113; Prayer ¶ g.) Section 302.101 is a registration requirement. Section 302.302(a) provides that a violator "is subject to a civil penalty"; it names no private claimant. Tex. Bus. & Com. Code § 302.302(a). The only provision of Chapter 302 that addresses private enforcement is § 302.303, which makes a violation a deceptive act "under Subchapter E, Chapter 17" and provides that a "public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce this chapter." *Id.* § 302.303(a)–(b). Several courts that have considered private § 302.101 claims accordingly analyze them as Texas Deceptive Trade Practices Act ("DTPA") claims. *Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778, at *7 (W.D. Tex. July 15, 2024); *Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-CV-00121-JCB-KNM, 2022 WL 17546957, at *9 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022). Those courts denied dismissal, holding that annoyance and similar harms can satisfy the DTPA's damages element. *Unified Health*, 2024 WL 3418778, at *7; *Johnson*, 2022 WL 17546957, at *9. But Plaintiff has not pleaded a DTPA claim. He does not invoke § 302.303 or § 17.50, and he demands a fixed penalty the DTPA does not provide;

its private remedies are economic and mental-anguish damages, trebled only on a finding of knowing or intentional conduct. Tex. Bus. & Com. Code § 17.50(b). Whether a private plaintiff may recover the § 302.302(a) penalty at all is unsettled: *Unified Health* declined to decide it, 2024 WL 3418778, at *7 n.3, and the decisions awarding it did so on default. *See, e.g.*, *Cacho v. Live Transfers, Inc.*, No. EP-23-CV-00372-DCG, 2024 WL 3103324, at *5 (W.D. Tex. June 24, 2024) (recommending default judgment awarding penalty), *report and recommendation adopted*, 2024 WL 3595780 (W.D. Tex. July 30, 2024). One court in this District has held that § 302.302(a) itself supplies a private claim for the penalty and that consumer status is not required. *Thomas v. Elite Legal Prac. PC*, No. CV 25-10854-MWF (MAAx), 2026 WL 1048217, at *6–7 (C.D. Cal. Mar. 23, 2026). Defendants respectfully submit that *Elite Legal*, which is not binding, is mistaken. Under Texas law, a statute that makes a violator "subject to a penalty" but is "silent about who may collect it" is strictly construed and creates no private cause of action by implication. *Brown v. De La Cruz*, 156 S.W.3d 560, 563–64 (Tex. 2004). And reading § 302.302(a) to supply a private claim would leave § 302.303(b), the provision that addresses private enforcement, with no work to do. Because the count rests on provisions that confer no private right, it fails as pleaded; this is a defect in the claim, not merely the prayer, because without the penalty nothing remains of Count Seven.

### ***2. Plaintiff Does Not Plead That He Is a "Consumer"***

Even construed as invoking § 302.303, Count Seven fails. The DTPA remedy belongs to "[a] consumer," Tex. Bus. & Com. Code § 17.50(a), defined as one who "seeks or acquires by purchase or lease, any goods or services," *id.* § 17.45(4). Plaintiff pleads the opposite: he "has never been a customer of Defendants" and never sought their services. (¶ 39.) *Unified Health* and *Johnson* did not address consumer status. A claimant who invokes the DTPA's remedies through a tie-in statute must still establish it. *Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 27–28 (5th Cir. 2010) (per curiam) ("[o]nly a 'consumer' can maintain a cause of action directly under the DTPA" (quoting *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 386 (Tex. 2000))). Any amended DTPA claim would also be subject to the DTPA's two-year limitations

period and its pre-suit and attorney-general notice requirements. Tex. Bus. & Com. Code §§ 17.565, 17.505(a), 17.501.

### *3. BRC and Better Companies Are Not Alleged to Be "Sellers"*

Chapter 302 regulates a "seller," "a person who makes a telephone solicitation on the person's own behalf." *Id.* § 302.001(5). The Complaint alleges no solicitation by or for BRC or Better Companies, and no agency through which another's solicitation could be attributed to them. *See Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 20046134, at *11–12 (W.D. Tex. Jan. 26, 2022) (dismissing § 302.101 claim against entity not alleged to have made the calls; "[m]erely benefiting from the calls is not enough"). Count Seven should be dismissed.

## I. Plaintiff Lacks Standing to Seek Injunctive or Declaratory Relief

A plaintiff seeking an injunction must show either "continuing, present adverse effects" of the past conduct or "a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119–20 (9th Cir. 2020). "The fact that a statute—here, the TCPA—provides for injunctive relief does not automatically convey standing to seek such relief." *Blair v. Assurance IQ LLC*, No. C23-0016-KKE, 2023 WL 6622415, at *4 (W.D. Wash. Oct. 11, 2023). The Complaint pleads neither: it alleges no continuing effect of any past call, the allegation that calls were continuing at filing (¶ 41) rests on the same unattributed calls discussed in Part IV.B, and the allegation that future calls are "substantially likely" (¶ 72) is a conclusion. Nor can Plaintiff borrow standing from the putative class. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) (named plaintiffs "must allege and show that they personally have been injured" (citation and internal quotation marks omitted)); *TransUnion*, 594 U.S. at 431. The prayer for a declaration that past conduct violated the statutes (Prayer ¶ b) is retrospective and fails for the same absence of any threatened future injury. *Wilson v. PacifiCorp*, No. 6:24-cv-01956-AA, 2025 WL 2802987, at *3 (D. Or. Sept. 30, 2025).

**J. The Four Class Definitions Are Defective on Their Face**

Defendants recognize that pre-discovery motions to strike class allegations are disfavored. The defects raised here are different in kind: each is a question of law apparent from the definition itself, none can be cured by evidence, and each, if left in place, will define the scope of nationwide discovery into four years of calling records for persons who have no claim. That is the prejudice the Standing Order requires. *See Bell v. Hawx Servs., LLC*, No. 2:24-cv-00825-DC-DMC, 2026 WL 2389324, at *4 (E.D. Cal. Aug. 17, 2026) ("Courts regularly strike fail-safe classes through a motion to strike.") (declining to strike a class defined by "telemarketing calls").

***1. The Internal Do-Not-Call Class Is a Fail-Safe Class***

A court "may not . . . create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct," because a member "either wins or, by virtue of losing, is defined out of the class." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc) (second quotation quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). The Internal Do-Not-Call Class consists of persons who received calls "after the person had communicated to Defendants . . . a request that the calls stop." (¶ 64.) Receipt of a telemarketing call after a request is the violation itself. In *Dixon v. Monterey Financial Services, Inc.*, No. 15-cv-03298-MMC, 2016 WL 4426908, at *1–2 (N.D. Cal. Aug. 22, 2016), the court struck a TCPA class of persons called "after such person had revoked any prior express consent," because membership depended on whether each person prevailed on the merits. The definition is also overbroad: it includes every person called within the ten business days § 64.1200(d)(3) allows, who has no claim.

***2. The National Do-Not-Call Registry Class Is a Fail-Safe Class***

This class is defined by receipt of more than one "telephone solicitation." (¶ 64.) That term excludes calls made with the recipient's "prior express invitation or permission" or to persons with an established business relationship. 47 U.S.C. § 227(a)(4); 47 C.F.R. §

64.1200(f)(15). Membership therefore cannot be determined without adjudicating each member's consent and business-relationship issues, and courts strike such definitions at the pleading stage. *Nichols v. eHealthInsurance Servs., Inc.*, No. 23-cv-06720-EKL, 2025 WL 689721, at *4–5 (N.D. Cal. Mar. 3, 2025); *see Bell*, 2026 WL 2389324, at *5 (distinguishing *Nichols* because the class in *Bell* was defined by "telemarketing calls," an objective criterion, rather than "telephone solicitations"). Plaintiff himself "anticipates the need to amend the class definitions." (¶ 65.)

***3. The Texas Subclass Cannot Be Defined by Area Code or by the Registration Element, or Reach Back Four Years***

The Texas Registration Subclass includes "[a]ll persons located in Texas, or whose telephone numbers bear Texas area codes." (¶ 64.) Section 302.101(a) applies only to solicitations made "from a location in this state or to a purchaser located in this state." An area code is not a statutory criterion, and Plaintiff alleges that the Texas area codes he saw belonged to the spoofed calling numbers (¶ 58). A person outside Texas whose number carries a Texas area code has no claim, and applying a Texas penalty statute to a solicitation with no Texas contact would raise the due-process concerns identified in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818–22 (1985). The subclass is also defined by receipt of solicitations "at a time when Defendants did not hold a registration certificate" (¶ 64), the liability element of Count Seven. *Dixon*, 2016 WL 4426908, at *2. And because the only private vehicle for a Chapter 302 claim is the DTPA, the subclass cannot reach back four years. Tex. Bus. & Com. Code § 17.565.

***4. The Robocall Class Is Overbroad and Defined by the Merits***

The Robocall Class reaches every person in the United States who, over four years, received any prerecorded call "made by or on behalf of Defendants." (¶ 64.) It contains no exclusion for persons who consented or who are Defendants' customers, so on its face it sweeps in persons with no claim. A class "defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly

unlawful conduct" is "defined too broadly to permit certification." *Olean*, 31 F.4th at 669 n.14 (quoting *Messner*, 669 F.3d at 824). And the definition makes membership turn on whether a call was made "on behalf of" Defendants, the contested vicarious-liability element; for any call placed by a third party, membership cannot be determined without first adjudicating liability for that call. *See Dixon*, 2016 WL 4426908, at *2. The definition should be stricken, with leave to propose one based on objective criteria independent of the merits.

**K. The "Sued Repeatedly" Allegations Should Be Stricken**

Paragraph 62 alleges that "Better Tax Relief has been sued repeatedly for the same conduct alleged here," and paragraphs 81 and 102 repeat the point as a basis for willfulness. Other lawsuits are not adjudications; allegations in other complaints prove nothing about these calls and have "no essential or important relationship to the claim for relief." *Whittlestone*, 618 F.3d at 974 (citation and internal quotation marks omitted). Left in place, they will invite discovery into unrelated litigation and suggest to a jury that Defendants are habitual violators. *See Bell*, 2026 WL 2389324, at *7 (striking references to another lawsuit against the defendant, which plaintiff did not defend). At a minimum, paragraph 62 names only BTR and supports no inference about BRC or Better Companies.

## V. CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint in its entirety: all claims against BRC and Better Companies; Counts One through Seven as to BTR; and the demands for injunctive and declaratory relief for lack of jurisdiction. Defendants further request that the Court strike the Robocall Class, National Do-Not-Call Registry Class, and Internal Do-Not-Call Class definitions; strike or limit the Texas Registration Subclass definition as set out in Part IV.J.3; and strike paragraph 62 and the "sued repeatedly" clauses of paragraphs 81 and 102. Consistent with the Standing Order, Defendants do not oppose leave to amend as to any defect that amendment can cure, other than the addition of allegations against BRC and Better Companies that Plaintiff has conceded he lacks a basis to make.

Dated: November 16, 2026

Respectfully submitted,
ISKANDER LAW, APC

By: /s/ Mario Iskander
Mario Iskander, Esq.
Attorneys for Defendants
Better Tax Relief, LLC,
Better Rise Capital, LLC, and
Better Companies, LLC

## CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)

The undersigned, counsel of record for Defendants Better Tax Relief, LLC, Better Rise Capital, LLC, and Better Companies, LLC, certifies that this brief contains 5,912 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 16, 2026

Respectfully submitted,
ISKANDER LAW, APC

By: /s/ Mario Iskander
Mario Iskander, Esq.
Attorneys for Defendants
Better Tax Relief, LLC,
Better Rise Capital, LLC, and
Better Companies, LLC