ILAN LAVIAN (SBN 354592)
ilan@lavianpc.com
**LAVIAN, P.C.**
10680 W. Pico Blvd., Suite 270
Los Angeles, CA 90064
Telephone: (213) 212-3036

TODD M. FRIEDMAN (SBN 216752)
tfriedman@toddflaw.com
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
23586 Calabasas Road, Suite 105
Calabasas, CA 91302
Telephone: (323) 306-4234

*Attorneys for Plaintiff Larry Nico Mathews, individually and on behalf of all others similarly situated*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| LARRY NICO MATHEWS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER TAX RELIEF, ~~LLC, a California limited liability company; BETTER RISE CAPITAL, LLC, a California limited liability company; BETTER COMPANIES,~~ LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. ~~______________~~ 8:26-cv-02161-MCS-KES<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**<br><br>**(2) VIOLATIONS OF TEX. BUS. & COM. CODE §§ 302.101 AND 302.302**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Larry Nico Mathews ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this First Amended Class Action Complaint against DefendantsDefendant Better Tax Relief, LLC ("Better Tax Relief"), Better Rise Capital, LLC ("Better Rise Capital"), and Better Companies, LLC ("Better Companies") (collectively, "Defendants"),Relief") and Does 1 through 10, inclusive,inclusive (collectively, "Defendants"), and alleges as follows upon personal knowledge as to his own acts and experiences, and on information and belief, including the investigation of counsel, as to all other matters.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA") and its implementing regulations, arising from Defendants' practice of bombarding consumers' cellular telephones with prerecorded telemarketing calls ("robocalls") and prerecorded voicemail messages promoting their tax-relief services—and continuing to do so even after consumers expressly tell Defendants to stop.

2. Before Defendants began calling him, Plaintiff hashad never been a customer of Defendants,Defendants hasand had never had any business relationship with Defendants,Defendants. andAt neverno consentedtime has Plaintiff given Defendants consent, written or oral, to receivecall Defendants'him calls.using an artificial or prerecorded voice. Nevertheless, beginning on or about June 20, 2025 (or even earlier), Defendants began placing prerecorded telemarketing calls to Plaintiff's cellular telephone and leaving him prerecorded voicemail messages. All told, and on information and belief, Defendants have left Plaintiff at least one hundred (100) prerecorded voicemails, and Defendants' calls have continued througheven the filing ofafter this Complaint.action was filed on August 7, 2026. Plaintiff's cellular telephone

number has been continuously registered on the National Do Not Call Registry since May 17, 2022—more than three years before Defendants' calls began.

3. OnNo orlater aboutthan May 6, 2026, Plaintiff told Defendants to "STOP.""Stop." Plaintiff repeatedmade histhe same do-not-call request on multiple other occasions, possibly evenboth before Maythat 6thdate and certainly numerous times afterwards.afterwards, by text message and by telling Defendants' live representatives to stop calling. Defendants ignored him: after Plaintiff's May 6th6, 2026 stop request, Defendants placed, on information and belief, at least 80 additional prerecorded calls to Plaintiff's cellular telephone.

4. The TCPA and its implementing regulations require any person or entity engaged in telemarketing to institute and honor internal do-not-call procedures, including recording and honoring a consumer's request not to receive further telemarketing calls within a reasonable time not to exceed ten business days. Defendants' conduct—placing at least 80 prerecorded calls after Plaintiff's multiple unambiguous opt-outs—demonstrates that Defendants either have no such procedures or systematically fail to honor them. *See* 47 C.F.R. §§ 64.1200(a)(10), 64.1200(d)(3).

5. Plaintiff brings this action on behalf of himself and classes of similarly situated consumers to recover the statutory damages Congress provided, of up to $500 per violation, trebled up to $1,500 per violation for Defendants' knowing and willful misconduct, together with injunctive relief. 47 U.S.C. §§ 227(b)(3), 227(c)(5). On behalf of a subclass of Texas recipients, Plaintiff also seeks civil penalties of up to $5,000 per telephone solicitation under Tex. Bus. & Com. Code §§ 302.101 and 302.302 because, on information and belief, Defendants solicited Texas consumers by prerecorded call without holding the telephone-solicitation registration certificate that Texas law requires.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed classes exceed 100 members, at least one class member is a citizen of a state different from Defendants—Plaintiff is a citizen of Texas, while ~~each~~Better ~~Defendant~~Tax Relief is a citizen of California—and, on information and belief, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8. This Court has supplemental jurisdiction over the Texas state-law claim under 28 U.S.C. § 1367(a) because that claim arises from the same nucleus of operative fact—Defendants' unlawful prerecorded-call telemarketing campaign—as the federal claims.

9. This Court has general personal jurisdiction over ~~each~~Better ~~Defendant~~Tax Relief because ~~each~~it is organized under the laws of California and maintains its headquarters and principal place of business in this District, in Orange County, California, where ~~each~~it is essentially at home.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because ~~Defendants~~Better ~~reside~~Tax Relief resides in this ~~District and are all residents of California,~~District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including that, on information and belief, the telemarketing campaign at issue was conceived, directed, and transmitted from ~~Defendants'~~Better Tax Relief's Orange County offices. Assignment to the Southern Division is appropriate because ~~Defendants~~Better ~~reside~~Tax Relief resides in Orange County.

## PARTIES

11. Plaintiff Larry Nico Mathews is a natural person and a resident of Fort Worth, Tarrant County, Texas. At all relevant times, Plaintiff was the subscriber, owner, and sole customary user of the cellular telephone number ending in 2446 (the "Number") and was financially responsible for the Number.

12. Plaintiff uses the Number as ~~a~~his personal, residential telephone line. ~~The Number is assigned to a cellular telephone exchange service, is not associated with any business, is not held out to the public for business purposes, and is used by Plaintiff for personal, family, and household purposes, including in and around his home.~~ Plaintiff is accordingly a "residential telephone subscriber" within the meaning of the TCPA and its implementing regulations.

13. Plaintiff registered the Number on the National Do Not Call Registry on May 17, 2022. The Number has remained continuously registered on the Registry since that date, and was registered more than thirty-one days before each of the calls alleged herein.

14. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15. On information and belief, Defendant Better Tax Relief, LLC is a California limited liability company with its principal place of business at 2525 Main Street, ~~Suite 300,~~ Irvine, California 92614, in Orange County. Better Tax Relief markets tax-relief and tax-resolution services to consumers under the "Better Tax Relief" brand.

~~On information and belief, Defendant Better Rise Capital, LLC is a California limited liability company with its principal place of business at 2525 Main Street, Suite 410, Irvine, California 92614, in Orange County.~~

On information and belief, Defendant Better Companies, LLC is a California limited liability company with its principal place of business at 2525 Main Street, Suite 500, Irvine, California 92614, in Orange County.

On information and belief, Better Tax Relief and Better Rise Capital are each a wholly owned subsidiary or affiliate of Better Companies. Defendants share common ownership, management, officers, managers, and employees; operate from the same offices at 2525 Main Street in Irvine; and conduct overlapping business operations. Each Defendant directed, controlled, participated in, authorized, and/or ratified the prerecorded-call telemarketing campaign alleged herein, and each Defendant is jointly and severally liable for the conduct alleged.

16. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each fictitiously named defendant—including any vendor, lead generator, dialing platform, "ringless voicemail" or other voicemail-delivery platform, or affiliated entity that transmitted, or caused the transmission of, the calls and voicemails at issue at Defendants' direction or on their behalf—is responsible in some manner for the conduct alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

17. AtBetter allTax relevant times, each Defendant acted as the agent, servant, employee, or joint venturer of each other Defendant, acted within the course and scope of that relationship, and ratified the conduct of each other Defendant. Each DefendantRelief is directly liable for the prerecorded calls it physically placed or transmitted and vicariously liable, under federal common-law agency principles, for calls placed or transmitted on its behalf by third parties.parties, including any Doe defendant.

## THE TELEPHONE CONSUMER PROTECTION ACT

### A. The TCPA's Restrictions on Prerecorded Calls to Cellular Telephones

18. In 1991, Congress enacted the TCPA to protect consumers from the nuisance and privacy invasion caused by unwanted telemarketing. Congress found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102-243, § 2(5)–(6), 105 Stat. 2394, 2394 (1991).

19. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

20. Under the FCC's implementing regulations, a call that includes or introduces an advertisement or constitutes telemarketing, made to a cellular telephone number using an artificial or prerecorded voice, is prohibited absent the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

21. A prerecorded voicemail message is a "call" within the meaning of the TCPA, regardless of whether it is delivered in a call the recipient answers, in a call that rings through to voicemail, or by "ringless," direct-to-voicemail technology. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Petition for Declaratory Ruling of All About the Message, LLC*, Declaratory Ruling and Order, 37 FCC ~~Red~~Rcd. ~~13675,~~13675 (2022) (FCC 22-85); *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911–12 (W.D. Mich. 2018); *see also Dickson v. Direct Energy, LP*, 69 F.4th 338, 340–41 (6th Cir. 2023) (receipt of even a single ringless voicemail is a concrete injury conferring Article III standing).

22. Section 227(b)(3) creates a private right of action for violations of Section 227(b) and the regulations prescribed thereunder and authorizes an action to enjoin such violations, to recover the greater of actual monetary loss or $500 in statutory damages for each violation, or both. Where the defendant's violations are willful or knowing, the court may, in its discretion, increase the award up to three times that amount—up to $1,500 per violation. 47 U.S.C. § 227(b)(3).

**B. The TCPA's Do-Not-Call Protections**

23. Section 227(c) of the TCPA directed the Federal Communications Commission (the "FCC") to promulgate regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

24. Among the regulations promulgated under Section 227(c) is 47 C.F.R. § 64.1200(c)(2), which prohibits initiating "any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." Such do-not-call registrations "must be honored indefinitely." *Id.*

25. Among the regulations promulgated under Section 227(c) is 47 C.F.R. § 64.1200(d), which provides that "[n]o person or entity shall initiate any . . . call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity," and which prescribes minimum standards for those procedures.

26. The minimum standards prescribed by 47 C.F.R. § 64.1200(d) include, among others: (a) a written policy, available upon demand, for maintaining a do-not-call list, *id.* § 64.1200(d)(1); (b) training of personnel engaged in telemarketing in the existence and use of the do-not-call list, *id.* § 64.1200(d)(2); and (c) recording and

honoring a consumer's do-not-call request within a reasonable time from the date the request is made, not to exceed ten business days, *id.* § 64.1200(d)(3). A do-not-call request must be honored for five years from the time it is made. *Id.* § 64.1200(d)(6).

27. AAt all times relevant here, a caller mustwas required to honor a consumer's revocation of consent or do-not-call request made by any reasonable means within a reasonable time not to exceed ten business days of receipt. *See* 47 C.F.R. § 64.1200(a)(10), (d)(3).(d)(3) (2025). Using words such as "stop" iswas a reasonable means of revoking consent and requesting that calls and messages cease. *Id.* § 64.1200(a)(10).

28. The do-not-call protections of 47 C.F.R. § 64.1200(d) apply to wireless telephone numbers. By rule, those protections apply to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

29. Section 227(c)(5) creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection," and authorizes recovery of up to $500 in statutory damages for each violation, which may be trebled to up to $1,500 per violation where the defendant acted willfully or knowingly. 47 U.S.C. § 227(c)(5).

30. Unwanted telemarketing calls constitute a concrete injury in fact. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). Such calls invade privacy, intrude upon seclusion, disturb the recipient's solitude, occupy the capacity of the recipient's telephone and voicemail box, deplete the telephone's battery, and waste the recipient's time. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

## THE TEXAS TELEPHONE SOLICITATION REGISTRATION STATUTE

31. Recognizing the particular harm that unsolicited telemarketing poses to Texas residents, the Texas Legislature enacted Chapter 302 of the Texas Business and Commerce Code, which requires "sellers" making "telephone solicitations"—telephone calls initiated to induce a person to "purchase, rent, claim, or receive an item"—to register with the Texas Secretary of State. Tex. Bus. & Com. Code §§ 302.001, 302.101.

32. Specifically, Section 302.101 provides that a "seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

33. No exemption under Chapter 302 applies to the telephone solicitations at issue: the sale of tax-relief and tax-negotiation services is not an exempt product or service. *See* Tex. Bus. & Com. Code §§ 302.053–.061 (exemptions); *id.* § 302.051 (a party claiming an exemption bears the burden of proving it).

34. A person who violates Chapter 302 is subject to a civil penalty of not more than $5,000 for each violation, and the party bringing the action is further entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Tex. Bus. & Com. Code § 302.302(a), (d).

## FACTUAL ALLEGATIONS

35. Defendants market tax-relief and tax-resolution services to consumers throughout the United States from their offices in Irvine, California. On information and belief, a core component of Defendants' marketing strategy is high-volume, outbound telephone solicitation using artificial or prerecorded voice messages.

36. Before Defendants began calling him, Plaintiff hashad never been a customer of Defendants, hashad never had any business relationship with Defendants, hashad never provided his telephone number to Defendants, and hashad never given Defendants prior express invitation or permission letpermission aloneto call him. At no time has Plaintiff given Defendants prior express consent, written consent toor oral, to call him.him using an artificial or prerecorded voice.

37. Beginning on or about June 20, 2025, Defendants placed, or caused to be placed on their behalf, telemarketing calls to Plaintiff's Number that delivered prerecorded voice messages to Plaintiff's voicemail box advertising and promoting Defendants' tax-relief services. The calls were transmitted from constantly rotating telephone numbers. On information and belief, Defendants rotated among originating telephone numbers to evade call-blocking and identification.

38. Between June 20, 2025, and theAugust filing7, of2026, when this Complaint,action was filed, Defendants left at least one hundred (100) prerecorded voicemail messages on Plaintiff's Number. Defendants' prerecorded calls to Plaintiff weredid continuingnot asstop of the date ofwhen this Complaint.action was filed; they continued until on or about August 15, 2026.

39. Each voicemail was plainly prerecorded: similar scripted messages, delivered in similar voice, tone, and cadence, were left on different days; the voice and intonation were generic, monotone, and unnatural, and did not sound like legitimate live human speech; and many of the voicemails were verbatim duplicates of voicemails left on other days—confirming that Defendants transmitted them en masse through an automated dialing platform.

40. Each of Defendants' calls and voicemails constituted "telemarketing" and a "telephone solicitation" within the meaning of the TCPA and its implementing regulations: each encouraged Plaintiff to purchase Defendants' tax-relief services.

41. On~~ or about~~ May 6, 2026, at approximately 11:11 a.m., a call from (540) 516-8358 left Plaintiff a prerecorded voicemail in which a voice calling itself Brandon Keller said he was calling about Plaintiff's balance with the government. Eight minutes later, at approximately 11:19 a.m., Plaintiff sent~~ Defendants~~ a text message ~~directing~~stating ~~them~~"Stop" to ~~"STOP"~~(540) ~~immediately~~516-8358. ~~after~~On ~~receiving~~information ~~a~~and ~~call~~belief, ~~that~~(540) ~~day.~~516-8358 ~~Plaintiff~~was ~~sent~~one of the ~~text~~rotating ~~message~~telephone ~~to~~numbers ~~the~~from ~~number~~which ~~that~~Defendants ~~called~~placed ~~him.~~their calls. Plaintiff's message unambiguously communicated his request that Defendants stop calling him. The next day, May 7, 2026, at approximately 10:55 a.m., a different telephone number, (502) 661-0477, left Plaintiff a voicemail from a caller using the same name and opening with the same words. Plaintiff had already sent similar messages to other telephone numbers that had called him and that, on information and belief, Defendants likewise used, including a text message stating "Stop please" sent to (701) 791-7898 on or about January 30, 2026, and a text message stating "Stop Please" sent to (405) 233-8903 on or about May 5, 2026.

42. Plaintiff's ~~"STOP"~~"Stop" request was a do-not-call request and a revocation of any conceivable consent, made by a reasonable means, which Defendants were required to record and honor within a reasonable time not to exceed ten business days. 47 C.F.R. §§ 64.1200(a)(10), 64.1200(d)(3).

43. Defendants did not stop. Plaintiff therefore repeated his do-not-call request on multiple subsequent occasions, including by text message and ~~upon~~by ~~answering~~telephone. ~~their~~Among ~~calls.~~other requests: (a) on or about May 14, 2026, Plaintiff sent a text message stating "Stop" to (800) 745-7354, another telephone number that had called him; (b) on or about June 1, 2026, Plaintiff sent a text message stating "Stop calling my number" to (866) 666-1167, a callback number recited in several of Defendants' prerecorded voicemails; (c) on or about June 3, 2026, Plaintiff sent a text message stating "Stop calling this number" to (835) 249-5073, another

telephone number that had called him; (d) on or about June 12, 2026, at approximately 5:30 p.m., Plaintiff sent a text message stating "Stop" to (502) 783-4447, four minutes after that number left him a prerecorded voicemail; (e) on or about July 8, 2026, at approximately 4:38 p.m., Plaintiff sent two text messages stating "Stop" to (866) 771-6541, five minutes after a prerecorded voicemail directed him to call that number; (f) on or about July 11, 2026, on two recorded calls, Plaintiff asked Defendants' live representatives to stop calling his telephone number; (g) on or about July 13, 2026, on another recorded call, Plaintiff told a live representative that he wanted the calls to stop, and the representative acknowledged his request; and (h) on or about July 21, 2026, Plaintiff sent two text messages stating "Stop" to (866) 386-5772, a callback number recited in one of Defendants' prerecorded voicemails.

44. Defendants still did not stop. After Plaintiff's May 6, 2026, stop request, Defendants placed, or caused to be placed, at least eighty (80) additional prerecorded calls and voicemails to Plaintiff's Number, including dozens after Plaintiff's subsequent stop ~~requests.~~requests and dozens after Plaintiff's recorded oral requests of on or about July 11 and July 13, 2026. All of these calls were received by Plaintiff within a single 12-month ~~period following his first do-not-call request.~~period.

45. Far more than ten business days elapsed between Plaintiff's ~~first~~May 6, 2026 stop request and the vast majority of Defendants' subsequent calls. No conceivable grace period excuses Defendants' conduct.

46. On ~~or about~~ June 25, 2026, at approximately 5:02 p.m., Plaintiff answered one of Defendants' ~~calls.~~calls, placed from (870) 967-8499. The call lasted approximately four minutes. Like the other calls Plaintiff had been receiving, this call was prerecorded, was made despite Plaintiff's registration on the National Do-Not-Call registry, and was made despite Plaintiff's prior requests to Defendants to stop contacting him. In the same minute, the same telephone number left Plaintiff a prerecorded voicemail in which a voice identifying itself as Barbara Thornton with the

"tax resolution review department" stated that there may still be opportunities to reduce Plaintiff's tax penalties and interest, and directed Plaintiff to press one or to call (877) 578-1925. Earlier that same day, at approximately 10:17 a.m., a different telephone number, (920) 608-0646, had left Plaintiff a prerecorded voicemail delivering a materially identical message from the same named speaker and reciting the same callback number, (877) 578-1925. On or about June 24 or June 25, 2026, on one of the prerecorded calls that Plaintiff answered, Plaintiff followed the prerecorded voice's instructions to be connected to a sales representative. Upon being connected to the sales representative, Plaintiff asked for the identity of the company the sales representative worked for.for, Inand athe sales representative said that he would send Plaintiff his contact information by text messagemessage. delivered onOn June 26, 2026, thatat salesapproximately representative11:26 identifieda.m., himselfPlaintiff asreceived workingtwo fortext Bettermessages from (949) 881-6951. The first read: "Hey Larry , did you still need help resolving your tax issues? [To opt out reply STOP]" The second read: "Better Tax Relief,Relief LLC.Victor Mora Phone: 949-868-4114 Email: vmora@bettertaxrelief.com [To opt out reply STOP]"

47. In the subsequent communications from Defendants, Plaintiff repeatedly asked them to stop contacting him—to no avail.

48. On information and belief, Defendants were the entities placing calls to Plaintiff both before and after their June 26, 2026 self-identification. Plaintiff believes as such for the following reasons: 1) in these calls, a similar sounding prerecorded voice repeatedly identified itself as calling from the "tax resolution review department";department" or from a similarly named tax resolution department or tax petition office; 2) the prerecorded voice used a similar sounding script in which it asked Plaintiff about potential tax problems and offered tax relief services; and 3) the prerecorded voice directed Plaintiff to "press 1" to speak with a representative, as it had on prior and subsequent calls.calls; 4) although the calls came from at least two

dozen different telephone numbers and used more than two dozen different speaker names, the voicemails directed Plaintiff to call back a recurring set of toll-free numbers—for example, the callback number (877) 578-1925 recited in both calls of June 25, 2026 was also recited in other voicemails; 5) dozens of the voicemails, like the automated system Plaintiff reached on or about July 11, 2026 and on July 30, 2026, offered an option to press 9 to opt out of further calls; 6) each live representative who identified himself to Plaintiff in writing did so either as "Better Tax Relief" or as a "Tax Specialist" who stated that he was located in Irvine, California, where Better Tax Relief is headquartered; and 7) on August 19, 2026, after this action was filed, Plaintiff received a text message from (949) 978-7364 stating: "Hi Larry Nico Mathews, this is Kim, tax specialist with Better Tax Releif [sic], following up about tax relief information tied to this number. I can answer a quick question here by text, or you can call us back at (844) 9774054. Reply STOP to opt out."

49. The records identifying the entity that physically placed each individual call to Plaintiff—including dialing-platform logs, campaign records, lead files, and vendor agreements—are within Defendants' exclusive possession, custody, and control. ~~Because~~To the ~~originating~~extent ~~telephone~~any ~~numbers~~call ~~displayed~~was physically placed by a vendor, lead generator, or other third party rather than by Better Tax Relief itself, that call was placed on ~~Plaintiff's~~Better ~~caller~~Tax ~~identification~~Relief's ~~were constantly rotated and, on information~~behalf and ~~belief,~~for ~~spoofed,~~its ~~Plaintiff~~benefit, ~~cannot~~to ~~determine~~generate ~~from~~customers for Better Tax Relief's tax-relief services, as the ~~calls~~facts ~~themselves~~alleged ~~which~~above ~~entity transmitted each one. Plaintiff therefore pleads attribution on information and belief pending discovery of Defendants' and their vendors' records.~~ show.

50. On~~ or about~~ July 30, 2026, at approximately 5:23 p.m., Plaintiff ~~answered another of Defendants' calls, placed from~~called (631) 477-7450. ~~Like~~The ~~the~~call was answered by an automated system that, among other ~~calls~~things, ~~Plaintiff~~offered an

option to press 9 to be added to a do-not-call list, stated that Plaintiff's information had been receiving,located this call was prerecorded, was placed to a number registeredbased on thehis Nationaltelephone Do Not Call Registry,number, and wasstated placed afterthat Plaintiff had repeatedly asked Defendants to stop contacting him. The prerecorded voice again identified itself as calling from a tax resolution department, offered tax relief services, and directed Plaintiff to press 1 towould be connected with a representative.tax specialist. Plaintiff pressed 1, but the call disconnected. Plaintiffwas then calledconnected (631) 477-7450 back and reachedto a saleslive representative, who confirmedgave his name as Luis Barajas, stated that he was located in Irvine, California, stated that he believed his office had already spoken with Plaintiff in June, and stated that Plaintiff had spokenthen been speaking with his colleagueassistant. During the call, at approximately 5:25 p.m., Plaintiff received a text message from (949) 710-2508 reading: "Luis Barajas Tax Specialist 949-296-4767." The following day, July 31, 2026, at approximately 1:30 p.m., Mr. Barajas left Plaintiff a voicemail from (949) 296-4767, a telephone number that Plaintiff's telephone identified as located in June.Irvine, That representative also confirmed that he was calling from Better Tax Relief, LLC.California.

51. EachThe following facts show that at least two of the followingprerecorded contacts,calls standingcame alonefrom andBetter independentTax of any allegation pleaded on information and belief, violated the TCPA and its implementing regulations:Relief:

(a) Defendants'The 5:02 p.m. call on June 25, 2026. Plaintiff answered a prerecorded call placedfrom (870) 967-8499 at approximately 5:02 p.m., and the call lasted approximately four minutes. Plaintiff's telephone also shows a voicemail from that number at 5:02 p.m., in which a voice calling itself Barbara Thornton with the "tax resolution review department" gave the callback number (877) 578-1925. As alleged in Paragraph 46, on or about June 25, 2026. That

call was made to Plaintiff's cellular telephone number using an artificial24 or June 25, 2026, on one of the prerecorded voice,calls wasthat notPlaintiff madeanswered, forPlaintiff emergencyfollowed purposes,the recording's instructions and was made without Plaintiff's prior express consent – let alone the prior express written consent required for telemarketing – in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2). The same call was a telephone solicitation initiatedconnected to a residentiallive telephonesales subscriberrepresentative. whosePlaintiff numberasked hadwhat beencompany registeredthe representative worked for. The representative said he would send his contact information by text message. On the morning after the 5:02 p.m. call, at approximately 11:26 a.m. on theJune National26, Do2026, NotPlaintiff Callreceived Registrythat fortext farmessage morefrom than(949) thirty-one881-6951. days – moreIt thanread: four"Better years – inTax violationRelief ofVictor 47Mora C.F.R.Phone: §949-868-4114 64.1200(c)(2).Email: Andvmora@bettertaxrelief.com [To opt out reply STOP]" The prerecorded tax-relief calls that Plaintiff was answering at that time, including the same5:02 callp.m. wascall, awere telemarketingtherefore callBetter initiatedTax moreRelief than ten business days after Plaintiff's unambiguous May 6, 2026 do-not-call request, in violation of 47 C.F.R. § 64.1200(d)(3) and (d)(6).calls.

(b) Defendants'The 10:17 a.m. call on June 25, 2026. Earlier that same day, a call from (920) 608-0646 left Plaintiff a prerecorded callvoicemail. placedIt onused orthe aboutsame Julyspeaker 30,name, 2026.Barbara ThatThornton, delivered materially the same message, and gave the same callback number, (877) 578-1925, as the voicemail from the 5:02 p.m. call. The 10:17 a.m. call likewisetherefore usedcame anfrom artificialthe orsame prerecorded voice, was placed to Plaintiff's cellular telephone number for telemarketing purposes without consent,caller and was not made for emergency purposes, in violation

~~of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2). It was likewise~~also a ~~telephone~~Better ~~solicitation~~Tax ~~to~~Relief ~~a number registered on the National Do Not Call Registry, in violation of 47 C.F.R. § 64.1200(c)(2), and a telemarketing call placed long after Plaintiff's May 6, 2026 do-not-call request and his repeated subsequent requests, in violation of 47 C.F.R. § 64.1200(d)(3) and (d)(6).~~call.

~~Defendants' text messages of on or about June 26, 2026. Those messages were telemarketing messages sent to Plaintiff's wireless telephone number after his do-not-call request, in violation of 47 C.F.R. § 64.1200(d)(3) and (d)(6), and were telephone solicitations directed to a number registered on the National Do Not Call Registry, in violation of 47 C.F.R. § 64.1200(c)(2). The do-not-call protections of subsections (c) and (d) apply to telemarketing calls and text messages made to wireless telephone numbers. 47 C.F.R. § 64.1200(e).~~

52. ~~Accordingly,~~Each of these two calls was made to Plaintiff's cellular telephone number using an artificial or prerecorded voice, was not made for emergency purposes, and ~~wholly~~was ~~apart~~made ~~from~~without Plaintiff's prior express consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2). Each was also a telephone solicitation to a number that had been registered on the ~~allegations~~National ~~pleaded~~Do ~~on~~Not ~~information~~Call ~~and~~Registry ~~belief,~~for more than four years, in violation of 47 C.F.R. § 64.1200(c)(2). On these two calls alone, Plaintiff received more than one telephone call ~~and more than one telephone solicitation~~ within a 12-month ~~period,~~period by or on behalf of the same ~~entity—Better~~entity, Better Tax Relief, ~~LLC—in~~LLC, ~~violation~~and ~~of~~may ~~the~~bring ~~regulations prescribed under 47 U.S.C. § 227(c). Plaintiff's private right of~~this action under 47 U.S.C. § ~~227(c)(5) is therefore established by the calls of June 25, 2026 and July 30, 2026 alone.~~227(c)(5).

53. On information and belief, Defendants ~~either~~ (a) have not instituted the written do-not-call policies and procedures required by 47 C.F.R. § 64.1200(d)(1); (b) have failed to train their personnel and their agents' personnel in the existence and use of an internal do-not-call list as required by 47 C.F.R. § 64.1200(d)(2); ~~and/or~~and (c) have failed to record and honor do-not-call requests as required by 47 C.F.R. § 64.1200(d)(3) and (d)(6). Defendants' transmission of dozens of prerecorded calls to Plaintiff after multiple unambiguous stop ~~requests~~requests—including ~~is~~after a live representative acknowledged Plaintiff's recorded request—is itself powerful evidence of each of these failures. So is what Defendants' representatives told Plaintiff when he asked that the calls stop: that it would take 48 hours for the calls to stop, and that the system started over each time he called back.

54. Because Defendants ~~had not instituted the procedures that 47 C.F.R. § 64.1200(d) makes a precondition~~failed to ~~initiating~~record ~~any~~and ~~call~~honor ~~for~~Plaintiff's ~~telemarketing~~do-not-call ~~purposes, each telemarketing call Defendants made to Plaintiff was initiated in violation of the regulation—and, at an absolute minimum,~~requests, each of the at least 80 calls made after Plaintiff's express do-not-call requests violated ~~the~~47 ~~regulation.~~C.F.R. § 64.1200(d).

55. Plaintiff received Defendants' prerecorded calls while Plaintiff was located in Texas. ~~These~~The calls came from at least two dozen different telephone ~~calls,~~numbers ~~almost always spoofed, oftentimes used Texas~~bearing area ~~codes.~~codes from around the country.

56. On information and belief, at no relevant time did any Defendant hold a registration certificate issued by the Texas Secretary of State pursuant to Tex. Bus. & Com. Code § 302.101.

57. Plaintiff was harmed by Defendants' calls. The calls and voicemails invaded his privacy, intruded upon his seclusion, and annoyed and harassed him; they occupied his telephone line and the limited storage capacity of his voicemail box,

rendering them unavailable for legitimate communications; they depleted his telephone's battery; and they wasted his time, including the time spent reviewing and deleting Defendants' voicemails and attempting to make the calls stop.

58. Plaintiff's experience is not unique. On information and belief, Defendants' failure to institute and honor internal do-not-call procedures is systematic, and Defendants have placed prerecorded telemarketing calls to hundreds or thousands of consumers, including after those consumers asked Defendants to stop.

59. Defendants have long been on notice that their telemarketing practices violate the law. Better Tax Relief has been sued repeatedly for the same conduct alleged here. Despite this notice, Defendants' unlawful conduct—including the failure to honor express stop requests—has continued, as Plaintiff's experience demonstrates.

60. On information and belief, Defendants maintain, or have access to, transmission records and dialing-platform logs reflecting the date, time, content, target number, and disposition of each outbound prerecorded call and voicemail, as well as inbound "STOP" and other opt-out requests, such that class members are readily identifiable from Defendants' own records and those of their vendors.

## CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), as a member and representative of the following classes and subclass (the "Robocall Class," the "National Do-Not-Call Registry Class," the "Internal Do-Not-Call Class," and the "Texas Registration Subclass," and together, the "Classes"):

> **Robocall Class**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, received one or more telephone calls on their cellular telephone number, made by or on behalf of Defendants using an artificial or prerecorded voice, including prerecorded voicemail messages.

> **National Do-Not-Call Registry Class**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, received more than one telephone solicitation within any 12-month period, made by or on behalf of Defendants, to a telephone number that had been registered on the National Do Not Call Registry for at least thirty-one days.

> **Internal Do-Not-Call Class**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, received more than one telemarketing call within any 12-month period, made by or on behalf of Defendants, after the person had communicated to Defendants, or to anyone calling on Defendants' behalf, a request that the calls stop, including by texting or saying "stop" or any substantially similar opt-out message.

> **Texas Registration Subclass**: All persons located in ~~Texas, or whose telephone numbers bear~~ Texas ~~area codes,~~ who, from four years prior to the filing of this action through the date of class certification, received one or more telephone solicitations made by or on behalf of Defendants, at a time when Defendants did not hold a registration certificate issued by the Texas Secretary of State pursuant to Tex. Bus. & Com. Code § 302.101.

62. Excluded from the Classes are Defendants; any entity in which any Defendant has a controlling interest; Defendants' officers, directors, legal representatives, successors, and assigns; any judge assigned to this case and members of the judge's immediate family and staff; and Plaintiff's counsel. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

63. **Numerosity.** The members of the Classes are so numerous that joinder of all members is impracticable. On information and belief, Defendants placed prerecorded telemarketing calls en masse to thousands of consumers, including hundreds or thousands who had submitted stop requests, hundreds or thousands whose telephone numbers were registered on the National Do Not Call Registry, and hundreds or thousands of recipients located in Texas. The precise number of members of each of the Classes is ascertainable from Defendants' and their vendors' records.

64. **Ascertainability**. The Classes are defined by objective criteria, and their members can be identified from Defendants' and their vendors' call records, lead files,

dialing-platform records, customer-relationship-management data, and carrier records, together with the National Do Not Call Registry.

65. **Commonality and Predominance.** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members, including: (a) whether Defendants made, or caused to be made, calls to cellular telephone numbers using an artificial or prerecorded voice; (b) whether Defendants made the calls without prior express consent, including prior express written consent; (c) whether the calls were telephone solicitations and/or telemarketing; (d) whether Defendants instituted the procedures required by 47 C.F.R. § 64.1200(d), including a written policy, personnel training, and the recording of do-not-call requests; (e) whether Defendants honored do-not-call requests within the time required by law; (f) whether Defendants are directly or vicariously liable for the calls; (g) whether Defendants' violations were willful or knowing; (h) whether Defendants made telephone solicitations to persons located in Texas without holding the registration certificate required by Tex. Bus. & Com. Code § 302.101; (i) whether Defendants made more than one telephone solicitation within any 12-month period to telephone numbers registered on the National Do Not Call Registry for at least thirty-one days; and (j) the appropriate measure of statutory damages and civil penalties and the scope of injunctive relief.

66. **Typicality.** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and all members of the Robocall Class received prerecorded calls placed by or on behalf of Defendants to their cellular telephones; Plaintiff and all members of the Internal Do-Not-Call Class received such calls after asking Defendants to stop; and Plaintiff, a Texas resident with a Texas telephone number, and all Texas Registration Subclass members received Defendants' telephone solicitations in Texas while, on information and belief, Defendants held no Texas registration certificate. Plaintiff, whose Number has been registered on the National Do Not Call Registry since May

17, 2022, and all members of the National Do-Not-Call Registry Class received more than one telephone solicitation in a 12-month period while their numbers were so registered. All assert the same claims under the same statutes and regulations arising from the same course of conduct.

67. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are aligned with, and not antagonistic to, those of the Classes, and Plaintiff has retained counsel experienced in consumer class actions and TCPA litigation. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

68. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages and civil penalties available to each member of the Classes are modest relative to the burden and expense of individual litigation, class-wide issues can be resolved through common proof drawn from Defendants' own records, and class treatment will conserve judicial resources, promote consistency and efficiency of adjudication, provide a forum for small claimants, deter illegal activity, and avoid inconsistent adjudications. No unusual manageability difficulties are presented.

69. Defendants have acted or refused to act on grounds generally applicable to the Classes, making final injunctive relief and corresponding declaratory relief appropriate respecting the Classes as a whole under Rule 23(b)(2). Moreover, on information and belief, the prerecorded telemarketing calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf are substantially likely to continue in the future if an injunction is not entered. Indeed, Defendants' prerecorded calls to Plaintiff continued after this action was filed, and on August 19, 2026, Plaintiff received a further text message from "Better Tax Releif [sic]" regarding "tax relief information tied to this number," indicating that Plaintiff's Number remains in Defendants' telemarketing records.

**FIRST CAUSE OF ACTION**

**Negligent Violations of the TCPA, 47 U.S.C. § 227(b)**

**(On Behalf of Plaintiff and the Robocall Class)**

70. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

71. Defendants made, or caused to be made on their behalf, telephone calls—including calls delivering prerecorded voicemail messages—using an artificial or prerecorded voice to the cellular telephone numbers of Plaintiff and the other members of the Robocall Class.

72. The calls were not made for emergency purposes and were made without the prior express consent—much less the prior express written consent—of Plaintiff or the other members of the Robocall Class.

73. Defendants thereby violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a) each time they made, or caused to be made, such a call.

74. The foregoing violations were, at a minimum, negligent.

75. As a result of Defendants' violations, Plaintiff and each member of the Robocall Class are entitled to an award of the greater of their actual monetary loss or $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

76. Plaintiff and the Robocall Class are also entitled to, and seek, injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls using an artificial or prerecorded voice, except for emergency purposes, to any cellular telephone number in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

**SECOND CAUSE OF ACTION**

**Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(b)**

**(On Behalf of Plaintiff and the Robocall Class)**

77. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

78. Defendants' violations of 47 U.S.C. § 227(b) were knowing and/or willful. Defendants knew that they did not have the prior express consent of Plaintiff or the other members of the Robocall Class to place prerecorded calls to their cellular telephones, and they continued placing such calls after Plaintiff—and, on information and belief, other recipients—expressly demanded that the calls stop, and after Defendants had been sued repeatedly for the same conduct.

79. As a result of Defendants' knowing and/or willful violations, Plaintiff and each member of the Robocall Class are entitled to seek, and request that the Court award, treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

80. Plaintiff and the Robocall Class are also entitled to, and seek, injunctive relief prohibiting Defendants' continuing violations, pursuant to 47 U.S.C. § 227(b)(3)(A).

**THIRD CAUSE OF ACTION**

**Negligent Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Internal Do-Not-Call Class)**

81. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

82. Defendants initiated, or caused to be initiated on their behalf, more than one telephone call for telemarketing purposes within a 12-month period to Plaintiff and to each member of the Internal Do-Not-Call Class after Plaintiff and each such member had communicated a request that the calls stop.

83. In so doing, Defendants violated the regulations prescribed under 47 U.S.C. § 227(c), including 47 C.F.R. § 64.1200(d), by initiating telemarketing calls to residential telephone subscribers, including wireless subscribers per 47 C.F.R. § 64.1200(e), without having instituted the required minimum procedures—including a written do-not-call policy, personnel training, and the recording and timely honoring of do-not-call requests—and by failing to record and honor do-not-call requests within a reasonable time not to exceed ten business days. 47 C.F.R. § 64.1200(d)(1)–(3), (6).

84. The foregoing violations were, at a minimum, negligent.

85. As a result of Defendants' violations, Plaintiff and each member of the Internal Do-Not-Call Class are entitled to an award of up to $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

86. Plaintiff and the Internal Do-Not-Call Class are also entitled to, and seek, injunctive relief prohibiting Defendants' continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

**FOURTH CAUSE OF ACTION**

**Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Internal Do-Not-Call Class)**

87. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

88. Defendants' violations were knowing and/or willful. Defendants received Plaintiff's and the Internal Do-Not-Call Class members' express stop ~~requests—transmitted~~requests—including requests transmitted to the ~~very~~callback numbers ~~Defendants~~recited ~~used~~in Defendants' own prerecorded messages and made directly to ~~place~~Defendants' ~~their~~live ~~calls—and~~representatives—and nevertheless continued to place prerecorded telemarketing calls to them. In Plaintiff's case, Defendants placed at least 80 prerecorded calls after his ~~first~~May ~~express~~6, 2026 stop request, and additional

calls after each subsequent request. Defendants knew, or recklessly disregarded, that the recipients had asked them to stop.

89. As a result of Defendants' knowing and/or willful violations, Plaintiff and each member of the Internal Do-Not-Call Class are entitled to seek, and request that the Court award, treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

90. Plaintiff and the Internal Do-Not-Call Class are also entitled to, and seek, injunctive relief prohibiting Defendants' continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

**FIFTH CAUSE OF ACTION**

**Negligent Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)**

**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

91. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

92. Plaintiff and the members of the National Do-Not-Call Registry Class are residential telephone subscribers whose telephone numbers were registered on the National Do Not Call Registry more than thirty-one days before Defendants' telephone solicitations. Plaintiff's Number has been continuously registered on the Registry since May 17, 2022. Registration on the Registry evidences a subscriber's objection to receiving telephone solicitations.

93. Defendants initiated, or caused to be initiated on their behalf, more than one telephone solicitation within a 12-month period to Plaintiff and to each member of the National Do-Not-Call Registry Class.

94. Defendants thereby violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) each time they made, or caused to be made, such a telephone solicitation.

95. The foregoing violations were, at a minimum, negligent.

96. As a result of Defendants' violations, Plaintiff and each member of the National Do-Not-Call Registry Class are entitled to an award of up to $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

97. Plaintiff and the National Do-Not-Call Registry Class are also entitled to, and seek, injunctive relief prohibiting Defendants' continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

## SIXTH CAUSE OF ACTION

## Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)

## (On Behalf of Plaintiff and the National Do-Not-Call Registry Class)

98. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

99. Defendants' violations were knowing and/or willful. Defendants placed repeated telephone solicitations to the Number even though it had been registered on the National Do Not Call Registry for more than three years, continued calling after Plaintiff's express stop requests, and continued after being sued repeatedly for the same conduct.

100. As a result of Defendants' knowing and/or willful violations, Plaintiff and each member of the National Do-Not-Call Registry Class are entitled to seek, and request that the Court award, treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

101. Plaintiff and the National Do-Not-Call Registry Class are also entitled to, and seek, injunctive relief prohibiting Defendants' continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

**SEVENTH CAUSE OF ACTION**

**Violations of Tex. Bus. & Com. Code §§ 302.101 and 302.302**

**(On Behalf of Plaintiff and the Texas Registration Subclass)**

102. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

103. Plaintiff received Defendants' prerecorded telephone solicitations in Texas, on a telephone number bearing a Texas area code, while Plaintiff was located in Texas.

104. Section 302.101 of the Texas Business and Commerce Code prohibits a seller from making a telephone solicitation from a location in Texas, or to a purchaser located in Texas, unless the seller holds a registration certificate issued by the Texas Secretary of State for the business location from which the solicitation is made.

105. Each of Defendants' prerecorded calls to Plaintiff and the members of the Texas Registration Subclass was a "telephone solicitation" within the meaning of Tex. Bus. & Com. Code § 302.001 because each was initiated to induce the recipient to purchase Defendants' services.

106. No exemption under Chapter 302 applies to the telephone solicitations at issue.

107. ~~At~~On information and belief, at all times that Defendants made, or caused to be made, telephone solicitations to Plaintiff and the members of the Texas Registration Subclass, Defendants did not hold a registration certificate issued by the Texas Secretary of State.

108. Defendants violated Tex. Bus. & Com. Code § 302.101 each time they made, or caused to be made, a telephone solicitation to Plaintiff and each member of the Texas Registration Subclass while holding no registration certificate.

109. Section 302.302(a) of the Texas Business and Commerce Code subjects a person who violates Chapter 302 to a civil penalty of not more than $5,000 for each

violation. Section 302.302(d) further entitles the party bringing the action to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees.

110. Plaintiff and the members of the Texas Registration Subclass are entitled to civil penalties of up to $5,000 for each telephone solicitation Defendants made in violation of Chapter 302, together with all reasonable costs of prosecuting this action, including attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

a. An order certifying the Robocall Class, the Internal Do-Not-Call Class, the National Do-Not-Call Registry Class, and the Texas Registration Subclass as defined above, appointing Plaintiff as representative of the Classes, and appointing the undersigned as Class Counsel;

b. A declaration that Defendants' conduct violated 47 U.S.C. § 227(b), 47 U.S.C. § 227(c) and 47 C.F.R. §§ 64.1200(c) and 64.1200(d), and Tex. Bus. & Com. Code § 302.101;

c. An award to Plaintiff and each member of the Robocall Class of the greater of actual monetary loss or $500 in statutory damages for each negligent violation of 47 U.S.C. § 227(b), pursuant to 47 U.S.C. § 227(b)(3)(B);

d. An award to Plaintiff and each member of the Robocall Class of treble statutory damages of up to $1,500 for each knowing and/or willful violation of 47 U.S.C. § 227(b), pursuant to 47 U.S.C. § 227(b)(3);

e. An award to Plaintiff and each member of the Internal Do-Not-Call Class and the National Do-Not-Call Registry Class of up to $500 in statutory damages for

each negligent violation of 47 U.S.C. § 227(c) and the regulations prescribed thereunder, pursuant to 47 U.S.C. § 227(c)(5)(B);

f. An award to Plaintiff and each member of the Internal Do-Not-Call Class and the National Do-Not-Call Registry Class of treble statutory damages of up to $1,500 for each knowing and/or willful violation of 47 U.S.C. § 227(c) and the regulations prescribed thereunder, pursuant to 47 U.S.C. § 227(c)(5);

g. An award to Plaintiff and each member of the Texas Registration Subclass of civil penalties of up to $5,000 for each violation of Tex. Bus. & Com. Code § 302.101, together with all reasonable costs of prosecuting this action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees, pursuant to Tex. Bus. & Com. Code § 302.302(a) and (d);

h. An injunction prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls using an artificial or prerecorded voice, except for emergency purposes, to any cellular telephone number, from initiating telephone solicitations to any telephone number registered on the National Do Not Call Registry, and requiring Defendants to cease all telemarketing communications made in violation of 47 U.S.C. § 227(c) and 47 C.F.R. §§ 64.1200(c) and 64.1200(d) and to institute the policies, training, and recordkeeping required by law, pursuant to 47 U.S.C. §§ 227(b)(3)(A) and 227(c)(5)(A);

i. An award of reasonable attorneys' fees and costs to the extent permitted by law;

j. Pre-judgment and post-judgment interest to the extent permitted by law; and

k. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims and issues so triable.

Dated: ~~August 7~~November 23, 2026

Respectfully submitted,

**LAVIAN, P.C.**

By: /s/ Ilan Lavian
Ilan Lavian

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By: /s/ Todd M. Friedman
Todd M. Friedman

*Attorneys for Plaintiff and the Proposed Classes*